The next case on the call of the docket is agenda number 13. Case number 124671. Chandra Joiner et al. v. SVM Management, LLC. Mr. Ring, please begin. One of the attorneys isn't here. Oh, I'm sorry. I did realize the opposing counsel wasn't here. Could you please be seated for a minute? We'll wait a few minutes. Now, Mr. Ring, you may begin. Thank you. May it please the Court, my name is Burton Ring. I represent Chandra Joiner and William Blackman. In the Campbell-Ewald case, the United States Supreme Court 2016 case, they said that an unaccepted settlement offer or an offer of judgment does not moot a plaintiff's case, be it a class action or some other type of case. In that case, prior to the deadline to file the class certification motion, the defendants made an offer of trouble damages, which was a TCPA type of case. In that case, the Court allowed some limited discovery and the Court said that this is an unaccepted offer of settlement and the plaintiff is not bound by that and the class action can continue. In that case, they said that the defendant tried to do the pick-off attempt. They tried to avoid the terrible action of the thousand-fold larger-than-the-bid that Mr. Gomez, a plaintiff in that case, declined to accept. In that case, there was, I think, more than 100,000 potential plaintiffs in that class action case. The United States Supreme Court indicated that we're going to allow that case to proceed, even though they gave the full amount or they offered to give the full amount of money in trouble damages to the plaintiff, which was not accepted. In that case, they let the letter of offer to expire in the deadline amount that the defendants gave to the plaintiff. The Supreme Court in that case indicated that when a plaintiff rejects such an offer, how good the terms are, in that case it was full damages, their interest in the lawsuit remains just as it was before. An unaccepted settlement offer, like any other unaccepted contract offer, is legal normality. As every first year law student learns, the recipient's rejection of an offer leaves the matter as if no other offer has been made. And so they went on in that case to say that there could be some other situations that perhaps this would not have the same effect. And we would then talk about the Barber case, which is sort of similar to one of the potential type of situations that the United States Supreme Court thought could happen. Mr. Ringer, are you asking us to overrule Barber and Ballard and follow Campbell-Ewald? Well, we're not asking specifically to overrule those cases. When you look at those set of facts in those cases, they're a little bit different. We have to look at the nuances of those two cases. I'll give you an example. In the Barber case, which the United States Supreme Court talked about how the offer was made, in the Barber case, $40, which was the amount of the luggage fee that the plaintiff sued for in that case, the airlines actually deposited that money on the same credit card that passenger used who was the plaintiff in the case. So in other words, they charged $40 on their credit card. They got the $40 back on their credit card. So it was not just an offer or a tender. Here's a check like in our case. They actually put it in their credit card account. And that was the big... Yes, and that's what many of the appellate court decisions in this state has also indicated to, that one is the big difference distinction between if you're just offering it, sending a check, or, for instance, a recent case the appellate court had last year, the Alderson v. Weinstein case, suing the clerk for monies back on DWP cases. When the lawyer actually cashed that check, that mooted the class action case. So that's a big distinction, and the United States Supreme Court discussed this in their comments, and all the commentators have discussed this as well. They said that we need not and we do not now decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff. And then the court can enter judgment for the plaintiff in that amount. That question is appropriately reserved for a case which is not hypothetical. So all the commentators after that in the Harvard Law Journal and the Columbia Law Journal all said that we're not deciding that today. So to answer your question, we're not saying that the Barber case should be reversed. We're looking at those specific facts in the Barber case. And here the facts of our case are largely different. The defendant sent the check, and within seven days the check was sent back. It was not cash, like in the Alderson v. Weinstein case, the appellate court, the state said. And it was also different from how the, like another case, the Fulton Beach case. They discussed that. That was the Seventh Circuit case, the Fulton Beach dental case. And they said that in that case should the focus be on the one tendering the check or should the focus be on the acceptance? Because it seems like, you know, the distinction you're making is, hey, we sent the check back. We never accepted the tender, which seems to be a little bit of a different argument than saying, well, they gave them the check. You know, I guess they could stop payment or do whatever they wanted on the check. The money wasn't in the account yet. But it sounds like your focus has switched just a little bit now to just giving the check back, saying, hey, I don't like your tender. Well, to really push it further, to envelope it further, the defendant has a couple options. They could ask the court to deposit that in an account, like under Section, for instance, 183H, where if you're a judgment debtor and you can't find the plaintiff, you can ask the clerk to get a release of satisfaction and deposit that. Here the defendant could have done a couple other things as well. They could have said, enter your judgment for us and we'll pay the judgment on that account, judgment on the pleadings. They could have said, also, we want to have a hearing on the attorney's fees, instead of saying we also offer the attorney's fees the court may decide to render in this particular case. So the focus still is on the tender. For example, if the defendant had access to direct deposit in somebody's account, that would be a different situation to you. If that amount of money went into Chase Bank on a direct deposit somehow, you don't have the same argument. Is that right? Right. That would be correct because they could argue that it's an accepted offer of settlement because it's in my account. I have perfect access to that money. Here it wasn't like that. Again, it's an unaccepted offer. And so that really has the chilling effect of chilling class actions, putting defendants in the driver's seat, which the United States Supreme Court said, no, that's not correct. Well, back to my direct deposit example. So the direct deposit goes in. What if at that point the plaintiff said, well, I don't want it. I don't want it. Send it back. Talks to the bank and says, what happens there? Well, that was a question the United States Supreme Court said is more hypothetical, and it leaves the question open. And that's why in the Barber case, which they never sent it back. They never rejected the money. That's why this court said that's fine. That's one of the reasons why they said fine, and they did it quickly. So they were sued for the $40. They said, here's the $40 back. We're going to give it back. It's just, in that case, the facts are just a couple weeks after the ‑‑ I think they filed suit, I think, three or four days after the canceled trip. So you give somebody some money, you give it back within three weeks, just because the lawsuit was filed on a class action basis, so they got the money back. But your focus and what you think the focus for us today is the actual, tangible having the money, right? That's one of the distinctions I'd like to point out today in how the United States Supreme Court discussed it. So it's your argument. You're saying stare decisis is not implicated, but this case is distinguishable from both Barber and Ballard. Is that right? Or am I incorrect? Yes. The stare decisis is that we're not really saying that Barber and Ballard were incorrectly indecided. We can talk about Ballard a little bit more in a few minutes. But in terms of the big, big distinctions in Barber is that they got the money, and that was just a few weeks after the transaction, and it was never sent back. And that was, I think, two weeks after being served, the defendants put that money in, and they weren't even required to file any kind of pleadings at that particular point. So that's a large distinction. But I still think under the United States Supreme Court, the plaintiffs, the defendant would still have to say, hey, I'd like to file a motion for judgment on the pleadings, enter judgment for the $40. It was paid. I want a satisfaction of that $40 we paid. It's not really clear in Barber if it was a fee-shifting case or not. Perhaps it was a contract or consumer fraud case. It was not clear whether or not it was fee-shifting or their attorney's fees were an issue to be decided later in that particular case. Didn't Barber find that even rejected offers can moot a claim? They had that discussion in Barber. That's true, but it wasn't really well-developed in that opinion, my understanding of that. But the litmus test that we're trying to get away from is whether or not when you file a motion for class certification, that is the litmus test for the pick-off situations. And that's not always the greatest litmus test. And when we look at now, again, the Ballard case, and that was I think all except Justice Nouveau was on that particular decision, that was where it was a fax case, a fee-shifting case, and that was a situation where they did immediately, I think on the same day, file the class certification motion. And that motion was pending for, I think, two years. They filed the lawsuit in 2010. It was pending until 2012. In late 2012, they filed the amended class certification motion. They had a little discovery. Finally, in 2013, the court ruled for certification on that one. So when you look at those cases, and that's what we discussed in our briefs, that creates a huge problem in how the cases in courts and the lower courts are managing their dockets in class actions. For instance, if you immediately file your motion for class certification, the court does nothing with that. They strike it. They don't set a briefing schedule. They don't set a hearing date on that particular motion. And that's what actually happened in Ballard. They did nothing with the case. It was a placeholder, or as we call it, in the Ballard decision, a show motion. And what this court said then is under Barber, there's no requirement of evidentiary materials in a class certification motion to get around that particular problem. And so you have the litmus test, well, okay, if you file your class certification motion, that is the only dispositive factor that could be used to deny the defendant's right for a pick-off attempt. And what we're saying today is that is a poor litmus test, and it doesn't give the courts, the lower courts, any control to manage your dockets in class action cases, and it also puts the defendants in the driver's seat, and it really chills class actions. So you are saying Ballard should be overruled? Yes, we're saying that the way Ballard is set up is that that's the sole litmus test for rejecting pick-off attempts. We're saying that's not the best litmus test, and we should give the lower courts more power to manage your dockets in class action cases. And that continues to happen in class action cases. We said here today that you file, and now it's a little bit more difficult, because when you electronically file your case, depending on where you file that, which county, you might not even get a case number for a while. They might not accept your case, and you can't file your motion at the same time you're filing your initial lawsuit. So you have the new problem now with electronic filing that you might have to wait a week, and if the defendant knows that they're sued in a class action, they can still do the pick-off attempt, and the defendants can say, well, hold it. I couldn't get a case number because of the way electronic filing is set up in some county. Like, for instance, Will County, it takes at least a week to get a case number. And so they could still use that, say, well, you didn't file your class certification motion, and because you didn't file that, we're allowed to do the pick-off attempt under Ballard. And that, again, is a very poor litmus test. One we discussed in the Ballard court looked at the Damasco case and said that you should have more control and discretion in looking at the different factors, and you should look at it in a case-by-case analysis. In this particular case, we had a situation where they made an offer, and the way the offer was that we offered to ‑‑ it was a tender of an unconditional amount. It didn't say we agreed to pay. When you look at the two aspects, they sent in the check for $1,290, and that was sent back. But the other issue that we discussed in the problems to the offer was that, as opposed to the Gatrell case, the 2011 Illinois appellate case, in the Gatrell case, they said that they will pay these sums. They will pay the attorney's fees. They will pay the court costs, and that was in Gatrell. Here, if you look at the offer, they didn't say they will pay the attorney's fees. They will pay the court costs. It wasn't in that offer at all. They said it's an offer of settlement, and they didn't say anything about paying at all. Here, the lower court did not set a hearing on attorney's fees. On the June 20, 2017 transcript, which is part of the record, we asked the court to decide how they wish to handle the attorney's fees if they're going to grant the motion to dismiss based upon the unaccepted offer of the $1,290. The lower court said on that June 20 that we're going to wait until the 308 decision if I allow a 308 appeal to the Illinois appellate court. On that day, the court just dropped the ball to the lower court and didn't say anything about the issue of attorney's fees. And so we have a situation that is the problem that you have the unaccepted offer. The defendant is walking away in this case with not paying any money. They still have the funds. If you compare that to the Barber case, they don't have the $40 anymore. They put it back in the credit card account. Here, the defendant still has the money in their possession. There's no judgment against them for the money. There's no hearing for attorney's fees. There's no judgment for attorney's fees. As a matter of fact, because the court dismissed the case under the cost statute here, under the Acquitted Civil Procedure, the plaintiff is responsible for the defendant's court costs. So here, the plaintiff filed the lawsuit. They get nothing, and they're required under the statute to actually pay the court costs of the defendant. So you have the complete flip side. Another case, as I just briefly discussed, is the Elderson v. Weinstein case of those in the Illinois Appellate Court case. It was published. There it said that when a clerk sent in the $50 filing fee that was wrongly paid or charged by the clerk's office, they sent the check back, and the attorney then cashed that check. And so that's another distinction from this case here. Other states, since Campbell-Ewald has adopted the Campbell-Ewald, so Illinois would be in the minority or one of the only states in the whole country that has not adopted the standard in Campbell-Ewald. For instance, Arizona, Maryland, Missouri, Connecticut, Alabama, California, Texas, Nebraska, and Ohio have all explicitly and expressly adopted unaccepted offers to not moot class-action settlements. And so you have that Illinois has to move towards the more modern way for the lower course of manager dockets that doesn't give the defendant the right to be in the driver's seat by making an offer to moot out class-action cases. But here, again, let's discuss some of the problems of the offer by the defendant in this case. When you look at, and that was attached to their motion to dismiss the affidavit by Mr. Griffin and the letter, it also said that it discussed that we will offer for the incurred attorney's fees. As this court well knows, there's a big difference between reasonable fees awarded by the court and incurred attorney's fees. For instance, under the Seller Disclosure Act, they use that language for incurred attorney's fees, which forces the plaintiff to pay their attorneys to have it called incurred attorney's fees. Now, here, the statute that we sued under doesn't say that the plaintiff must pay their attorney's fees, be allowed attorney's fees, be awarded by the court. And when they use that word incurred attorney's fees, that, again, is not the compliance necessary under the offer. Like in Gatrell, that was made, we will pay the attorney's fees, is awarded by the court. Here they said, well, they're offering the incurred attorney's fees. They didn't say anything about paid fees of the court awards. They will pay the fee of the court awards. They said only the incurred fees. So, again, is this a correct offer that complies with the requirements? No, it's not. Mr. Griffin. Thank you. Mr. Griffin. Good morning, Your Honors. My name is Michael Griffin. I represent SVM Management, LLC. Thank you for this tremendous honor this morning. It's a privilege to be here in this matter before you today. Thank you. As an initial matter, when my client brought me this case, I had three cases in front of me. I had Barber, I had Ballard, and I had Gatrell. You all know I have a public work case regarding validity of tenders. I had those three cases when my client brought me this case. I reviewed the document. I saw it in the motion. The class certificate was filed. I assumed that the Barber was the controlling precedent. And I wrote the February 1, 2017 settlement offer. It's not an offer. It doesn't include the word offer. It's an unconditional tender. As my letter states, it is an unconditional settlement tender for Comp 1. It provided a check for 1290, which was all the maximum relief for Comp 1 of the SDIA. And it provided unconditionally tenders the following. All court costs and reasonable attorneys fees, as allowed by the court, definitely disappear in the pursuit of Comp 1. That was the language from Gatrell. I had that case in front of me when I drafted that letter. My client, through me, reasonably relied on Gatrell. He relied on Barber in prosecuting and litigating this case. Barber relies on Wheatley. Wheatley is a 35-year-old case. Parties have settled expectations about how cases should be litigated from that point. When there's a 35-year-old precedent, such as Wheatley, that Barber affirms, and then this Court of Ballard affirms a few years later, parties should have that courtesy to rely on that precedent that has stood for so long. As an initial matter, I think Mr. Rowe is correct that as a threshold question, the concern is whether there was a valid tender in this case. I think before we can get to the issue of whether Barber is still in the loft, or whether this Court still wants to keep that loft in light of Campbell v. Gomez, the first issue is whether there was a valid tender. I submit to your honors that under Gatrell, there absolutely was. The February 1, 2017, communication followed the Gatrell language almost to a T. I did that to obtain the dismissal of the case before a motion for a class cert would be filed. So, respectfully, I think when your honors apply the loft tender in Illinois and look at the February 1, 2017 correspondence, you'll find that there was a valid tender. That takes us to the next question, whether Campbell Ewald should now govern this Court's jurisprudence moving forward, and whether this Court has to overrule Barber and Ballard to the extent that Ballard upheld Barber. Your honors asked Mr. Ring whether this Court would be required to overrule Barber. That answer is absolutely yes. If you accept Appellant's position here, your honors will be required to overrule Barber. Barber makes it very clear that if a tender was made before the filing of a motion for a class cert, that that tender moves out of the class action. The Barber Court, of course, relies on Wheatley, and Wheatley analyzed this issue through the adequacy of class representation. It didn't analyze it through contract law principles or through Rule 68 offers of judgment. The reason why this is important is because Illinois law, as set forth by this Court in Wheatley, decided that it would view the continued validity of a class action in light of a tender through the adequacy of class representation. When there is a full tender, the class representative, the putative class representative, is no longer an adequate representative because he or she can be held. That person can't be expected to self-prosecute the case, and that person's interests no longer align with the other class members in the case. That's directly from Wheatley, the 1984 case. So because the Wheatley analysis and the Illinois analysis differs from the federal analysis on this point, I think the better practice here for this Court to continue with its precedent, uphold the historic decisis between Williamson, Barber, and Ballard, and because of the analytical framework, the analytical foundation of this case, differs from the Campbell-Ebolt analysis. Now, of course, the responses that our jurisprudence under 2-801, the Putative Civil Procedure, often tracks federal rules under 2-823. That's a difficult argument for Appalachia Square. I think from a policy perspective, having a difference between what forum we're in, whether we're in federal court or state court, if we're at the Daly Center a couple blocks away in Thurston Building, you can have diametrically different results on whether a tender moves a class action. That's an issue that would probably be addressed. I expect it by Appalachia, but I imagine your honors would have that same concern in your head, is that now we have the Illinois Supreme Court precedent that is opposed directly to the United States Supreme Court precedent. So you're conceding that there's a direct contradiction between the Campbell case and your position today? Yes. Between Barber and Ballard, to the extent that Ballard upholds Barber, there's a direct, I believe a direct contradiction between Campbell-Ebolt and Barber. And so can you discuss a little bit the interplay between the Supreme Court's position and, as you say, the inconsistent position of this court? How does that work? I believe it works in that Campbell-Ebolt firmly holds that a tender of all amounts to the plaintiffs before filing a motion for class certification does not move out the class action at the federal level. Now, of course, Justice Kagan's analysis in that regard dealt with Rule 68 and an offer of judgment. Now, we have no counterpart to Rule 68 in an offer of judgment in Illinois. I think that's another reason, and I don't mean to get off track from your direct question, but I believe the fact that we don't have a rule 68 counterpart here in Illinois is important for this court to distinguish Barber, Campbell-Ebolt, and uphold this precedent in Barber because Rule 68 of federal procedure allows a defendant to make an offer of judgment. If the plaintiff is under no obligation to accept that offer, this has been interpreted under contract law principles by Justice Kagan and Campbell-Ebolt. So going further in Rule 68, if the plaintiff obtains a judgment that's not more favorable than what the defendant offered as a judgment, well, then the plaintiff is liable to pay the costs incurred after that unaccepted offer of judgment. We have nothing like that in Illinois, and going back to Wheatley, we don't analyze our 2-1-1 jurisprudence concerning a tender moving a class action underneath contract law principles. This Court has analyzed it through adequacy of class representation. I'm sorry, as in what? This Court has analyzed the issue of whether a tender moves a class action through the prong of adequacy of class representation. And not contract principles. Correct. So we should not be moving a contract with principles. I think Your Honors have the authority to look at that and make those same arguments, but it would be abandoning completely the Ballard, Barber, and Wheatley precedent. It would completely create a rule of law and direct contradiction to this Court's precedent that stood for at least 35 years. Is there any factual distinction between Barber and the case here in that Barber was, as the Supreme Court in Campbell talked about, an actual deposit into the account, where here there's a check in the mail? Is there any difference? I don't believe so, but factually, of course, it's in the record. I have the check with me. This is a certified check. It's a cashier's check. So with respect to there being a direct deposit, as Your Honor discussed with Mr. Ring, or whether there being a deposit into a bank account, a cashier's check is just as good. There's no difference in the function of tendering those payments. This was hand-delivered to Mr. Ring's office. As my February 1, 2017 letter indicates, I sent my clerk to Mr. Ring's office. I immediately received an email from one of his associates indicating they received it. They didn't accept it, but they acknowledged received it. Mr. Ring sent me a letter back, which I attached to my original book, which I did submit to the trial court, stating for various reasons that the check was rejected, the unconditional tender was rejected, and finally that we reject your request for our billing records for purposes of your so-called tender. So this kind of sideways into another portion of the argument that there was no actual tender of money. Well, there was a cashier's check tender. There was a letter that exactly conformed with the trial. And for Mr. Ring's letter back, he said we're rejecting your request for our billing records. If Mr. Ring had provided those billing records, we would have been in a different place. If plaintiff or appellant's counsel would have moved in the trial court for a hearing on the fee petition, that would have been acceptable, too, because our letter clearly lays out we're unconditionally offering to pay these amounts to you. Can you address the argument that this is not unconditional, in that it has this additional piece of the attorney's fees to be determined later? So that language, I believe respectfully, pulls directly from the trial. In paragraph 2 of my letter where I say unconditional tenders following the two all-court costs and reasonable attorney's fees as allowed by the court, that language comes directly from Gautreau. I carefully looked at Gautreau to match that language because I didn't want an objection saying that – or I wanted to be able to overcome an objection saying that this was not a valid tender. I mean, I don't know what appellant's counsel's costs and fees were at that time. That's why I asked for billing records. If billing records were submitted to me at that time, I might want to pay them. Mr. Griffin, aside from the stare decisis argument, why is the analysis of this court more persuasive than the U.S. Supreme Court analysis in Campbell v. Will? Respectfully, on that point, Your Honor, 2-801 provides an, I'm quoting, class action in any court of the state. And a party may sue or be sued as a representative party of the class only if the court finds within the four elements, numerosity, predominance of questions, and adequate representation. So 2-801 provides that the court must make a finding for a party to be able to sue on behalf of another person. And 2-801, I believe in that regard, is different from our federal Rule 23 counterpart because this doesn't let somebody just put a label on a complaint as a class action and say, all right, now I'm representing everyone who fits in one of my class boxes. 2-801 provides that the court must make that determination. And because the only way for the court to make that determination is to have a motion for it, that there is no protection, so to say, of those absent purported class members until that motion is filed. So it is almost as if before that motion is filed, there is no complaint on file, essentially, with respect to the absent punitive class members. And whether a defendant tenders a full unconditional payment before a complaint is filed or whether they tender after a complaint is filed but before a motion for a class cert is filed, it doesn't matter in our law, I believe. That is, I believe, the principal difference. It's one of the differences between Campbell-Ewald and Barber and between 2-801 and Rule 23. But Campbell-Ewald makes it clear. It's based on contract law principles and Rule 68, an offer of judgment. Here, it is not about an offer of judgment. It's about essentially a plaintiff not taking yes for an answer. Plaintiff sues, says, I want the maximum relief plus my cost of fees. Defendant comes in and gives them exactly what they want. And the plaintiff is saying, nope, not good enough. I think Justice Roberts' dissent in Campbell-Ewald lays out those arguments a little better. Of course, it's a dissent. It's his own presidential value. But when we're talking about a highest court of the land, did it change its mind depending on its constitution or its makeup, rather? We might want to look at our precedent a little more carefully before we overrule it because we can't follow the winds of change with the United States Supreme Court. We need to have some firmness in our Illinois Supreme Court jurisprudence, especially when litigants rely on that jurisprudence. Now, if I can, just very briefly on this issue, if Your Honors are considering overruling Barber and following federal precedent, I'd ask that it be prospective only. And this court has complete discretion. Not complete discretion. There are some balances of discretion. But this court has the ability to make a prospective ruling. And that prospective ruling is going to depend on a couple things. Where there's a new principle of law established by overruling clear past precedent on which litigants may have relied, this court can make a prospective ruling only. That's Alexson v. Village of Brown Lake Park, 176-782, 1997 case from this court. Heastie v. Roberts, 2007 case from this court, provides that when we look at or when the Supreme Court looks at considering a prospective ruling because of clear past precedent, that whether the purpose and prior history of the rule will be promoted or delayed, and whether a prospective application is mandated by the balance of equities, I submit to Your Honors here today that my client, relying on this court's well-settled precedent, relying on the appellate court's precedent, should have some weight. And it doesn't apply just to my client. It applies to all litigants who have carefully relied on this court's 35-year-old precedent and sent down Wheatley, affirmed in Barber, and then affirmed a few years later in Ballard. Because an overruling of Barber would constitute a new principle for those litigants who relied on that clear past precedent should be protected. I note in that regard that appellants don't walk away empty-handed. They get their 1290 pursuant to the statute. And by the way, the Securities and Deposits were noted in the order. The security deposit was 1290. It was refunded in full within two weeks. What we're talking about here under the SCIA is about 13 cents of interest. That penalty, the maximum recovery was cost, fees, and an amount equal to the deposit. So appellants and appellant's counsel will walk away with recovery, fees, and costs. In this case, with a prospective ruling only. Now with that said, I have to go back to strongly urging your honors to affirm the precedent in Ballard. We have, this court has looked at this issue differently than the federal courts. It has non-analogous statutes issued. 2-801, although it is often modeled on and interpreted similarly to Rule 23, it is different than Rule 23. Rule 68 has no counterpart here in Illinois. This court does not analyze these class, whether it's under Mutz's class action or the principal's contract law. It analyzes this issue under the adequacy of class representation, and whether that plaintiff, who's been made whole, is still an adequate class representative. One thing that wasn't addressed by appellant is whether the trial court's stay of discovery was appropriate in this case. I submit to the courts that it was. That's a discretionary ruling that the trial court made. The trial court stayed discovery pending resolution of the motion to dismiss. That there was no arbitrariness, capriciousness, or illogical decision making when the trial court stayed discovery. Appellant hasn't shown that there was an abuse of discretion. So respectfully, with respect to the issue of the stay of discovery in this case, I ask your honors to affirm that ruling in the appellate court. With respect to the entire case, we respectfully ask that you affirm the appellate court in this case and uphold Barber and Bauer as good continued law in this case. If your honors do not come forward, I would respectfully ask that your honors limit this ruling solely to a prospective ruling only that applies from a bright line date, some date in the future, and does not apply retroactively. Thank you for your time this morning. It's been an honor and a privilege. Thank you, Mr. Brink. Mr. Brink. Thank you. When you look at the February 1st, 2017 letter, it's very clear. And it says that we're unconditionally tender the following. We say the cash is checked in paragraph one. In paragraph two, they say all court costs and reasonable attorneys fees is allowed by the court that the plaintiff's incurred in pursuing count one of the complaint. Again, they said in the next paragraph, they use the word related to your court costs and attorneys fees incurred and thus far in pursuing count one of the complaint. And why is that defective? It's defective in two ways. It's effective that they use the word incurred, which this court and all the statutes say incurred is largely different from what the court awards in reasonable attorneys fees. And we also know that you get attorneys fees for pursuing your attorney fee petition. So the way they limit to that, incurred thus far in pursuing count one, limits the amount of attorneys fees to a certain level in the case. Let's talk about the Wheatley case and the stare decisis argument that counsel is making. First of all, in the Wheatley case, which is 1984 Supreme Court case, in that case it was more of an injunctive case rather than asking for specific monetary damages, suing for teachers who lost their jobs. In that particular case, the applicable agency gave the jobs back. Some persons took the jobs back. Others decided they wanted to retire. But it's clear from that opinion, and they said, and I'll quote, Illinois courts have found that exceptions to the mootness doctrine in actions where there is substantial public interest. And they go on to say that, or where the issues were likely to recur but unlikely to last long enough to allow appellate review to take place. So here we have the same problem. Exactly. So that's an out on the mootness doctrine here for this particular case. You have hundreds and hundreds of tenants who didn't get their interest on their deposits, didn't get their deposits returned. These events are likely to occur in the future. Other people could file regular simple lawsuits for the return of their deposits, fulfilled by the landlord to pay their interest under that statute. So the Wheatley case has the out, and so mootness doesn't automatically moot out every single case and force the lower court to dismiss the case because of the apparent or purported mootness issue. So Wheatley has a lot of holes, and it doesn't necessarily mean that we have to reverse Wheatley. And when you look at the common-sense approach that the commentators, for instance, the Harvard Law Review, we talked about in our brief, and they said really the common sense is because of the inherent tension between the class action form and the mootness, as one scholar has put it, individual litigants' claims are moot, yet she desires to keep litigating. What she essentially wants to do is litigate other people's claims. And that, of course, is the definition of a class action case. And so here you have the situation where there was an incomplete offer, and it wasn't accepted, it was rejected, and we have the right to continue to litigate on behalf of this particular client. These are claims that are likely to occur in the future, very much so. So, again, the litmus test that the courts use in the Ballard is not the best right-line test. It could be a factor, and Rule 23, along with our specific rule, 801, allows a number of factors for the court to use to certify a class action. One of those is the adequacy of the representation, the adequacy of the plaintiff. They can certainly take a deposition of the plaintiff, asking the plaintiffs here, in this case, if they're going to get the full amount, are they still going to go forward and litigate? Can they contest that? Sure. Are they at the deposition or at the trial of the class third motion? So the one test that the Ballard says is the right-line test is not the sole issue that the court should use for determining class certifications or for letting the case be mooted off by the pick-off attempt. Now, we also know that when you have a cash-use check, as counsel pointed out in his argument, just because he has it, he can certainly withdraw that check and go back to the bank and say, I want my money back. Please deposit the amount I took it from. So just because it was a cash-use check is still meaningless. They can get the money back. They still are in control of the money. Even though it's out of their account, when they drew the check, they can certainly get it back. If they decide they don't want to, they want to hold it on, in this case, it's more than 180 days, they still have access to the money, which we don't. They still have the check. Counsel makes the additional last argument that you can file a class action complaint, call a class action complaint, be in the Chancery Division, and that's all you have to do when maybe it could be something other than a punitive class action case. And the problem with that argument, as addressed also in the Campbell-Ewald and the commentation after that, is that there are vehicles to stop that. There's 137 rule, and you could say, well, if they don't really have a class action case, they didn't do their investigation properly, or this is not a class action case, and they can use that, but there's limits to that. Consumer fraud, for instance, if it's filed under consumer fraud, the consumer fraud is fee-shifting both ways, so they have that right as well. So in terms of the discovery here, the Butler case specifically pointed out that the courts have the discretion and they should control their own docket. When you look at the transcript in this case, the lower court, Judge Meyerson, indicated that she wants to maintain control over her document and decide upon the discovery issues, and she actually did decide some discovery issues. As a matter of fact, there was a subpoena that she decided to quash and to say, let's limit the subpoena. And so she was getting involved in the discovery. In the Butler case, the court did allow some discovery. There was little discovery taking place in the Butler case, but at least they had some discovery going on. And so to not allow any discovery, which in the older cases they said is plaintiff really pursuing a motion request with reasonable diligence, and they would look at what level of discovery is going on, they kind of took away those arguments. But here, to not allow any discovery, to stay discovery, discovery was filed in March, just about a month and a half after the case was filed, about 14 days after the 30-day time has passed from the time the defendant was supposed to follow their pleading. So the bail order is about the timing of the motion for class action and certification and all of that kind of thing, right? As was, to some degree, the Bayward case about when this, if a tender is made before a motion for classification is filed or not. Do either one of those cases say the court should not use contract law to decide what is occurring when a defendant tenders a settlement? I don't believe they had any discussions about contract law in their opinion in those cases. Were either one of them about what is a valid tender or not? No, the Ballard case certainly didn't discuss the tender. They only had a few sentences in that case about that the defendant made three different tenders or offers in that case, and they really didn't discuss them very much in the opinion in Ballard. And they said it was three offers made while the motion was pending, and then again in Ballard, as we said before, two and a half years later, they filed their amended class motion with more information because their first motion was just the motion filed on the same day the lawsuit was filed. So they really didn't. But neither case addressed the question of what kind of tender and whether it's accepted or not is sufficient to trigger this idea that the defendant has appropriately resolved the case, and so, therefore, the case is moved. Neither one of them talked about the nature of the tender. Is that correct? The Ballard case is the one that they said they discussed that tender by putting it in the same credit card account that they used to pay for the case. Was that the issue in the case, the nature of the tender? No, they didn't make that an issue. They really relied on that as a mootness issue, pretty much that there was no more active controversy going on, and that's the way the Barber case was more or less decided. They didn't really have an active discussion. But did the Barber case answer the question here of the nature of the tender? They didn't have enough information there for what we see, the way it was and the way discussions are after Campbell, Ewald, and before, and Gatrell. We believe that that is an important distinction, especially with the quote I made before that this U.S. Supreme Court is knocking a rule on a different set of statutes. For instance, if it was given in an account solely for the plaintiff, there's a judgment on the pleadings, and then whether or not an attorney's visa is devolved or not, they didn't get into that discussion. They said they have to have control in account for the plaintiff to put it in, and that's what the U.S. Supreme Court said in Campbell, Ewald, and that's why we look back at Barber and say, well, they had it back on their credit card. So exactly how they paid it, that's exactly how they got back. When you look at Gatrell... Counsel, do you have time? Justice Tyson has to finish. Thank you. Thank you very much for your questions and time. Case number 124671, John Rejoiner, Appellant v. S.V.M. will be taken under advisement as agenda number 13. Thank you, Mr. Griffin and Mr. Green, for your arguments this morning.